UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RONALD GAINES,

                Plaintiff,

v.                                     ACTION NO. 2:15cv549

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security,*

                Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Ronald Gaines, brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Gaines' claim for a period of disability and disability insurance benefits ("DIB") and disabled widower's benefits under Title II of the Social Security Act.

An order of reference dated February 23, 2016, assigned this matter to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. ECF No. 6. The Court recommends that Gaines' motion for summary judgment be GRANTED on the grounds addressed in Gaines' reply brief (ECF Nos. 8, 13), the Commissioner's motion for summary judgment (ECF No. 11) be DENIED, and the decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this report and recommendation.

## I. PROCEDURAL BACKGROUND

Plaintiff, Ronald Gaines, filed an application for DIB and widower's insurance benefits on December 10, 2013, alleging disability since January 17, 2013, due to major depressive disorder with anxiety, obstructive sleep apnea, migraines, left arm carpal tunnel syndrome with neuropathy, right arm carpal tunnel syndrome with neuropathy, right and left knee Osgood-Schlatter disease with degenerative joint, lumbar spine strain, left foot metatarsalgia, and bilateral pes planus with plantar fasciitis. R. 303, 306–307, 365.[1] The Commissioner denied Gaines' applications initially on April 15, 2014, R. 207–32, and upon reconsideration on September 9, 2014. R. 233–66. At Gaines' request, an Administrative Law Judge ("ALJ") heard the matter on February 11, 2015. R. 171. Gaines, who was represented by counsel, and a vocational expert testified at the hearing. R. 171–97. On March 20, 2015, the ALJ found that Gaines was not disabled under the Social Security Act, and denied his claims for DIB and widower's insurance benefits. R. 150–70. The Appeals Counsel denied Gaines' requests for review of the ALJ's decision on September 10, 2015, September 24, 2015, and October 16, 2015. R. 1–18. Accordingly, the ALJ's decision stands as the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. § 404.981.

On December 18, 2015, Gaines filed an action in this Court for judicial review pursuant to 42 U.S.C. § 405(g). ECF No. 1. In response to the Court's order, the parties filed motions for summary judgment, with supporting memoranda, on March 24, 2016 and April 27, 2016. ECF Nos. 8–11. The only issue raised in Gaines' memorandum in support of summary judgment was an assertion that the ALJ's failure to consider or weigh the individual unemployability ("IU")

---

[1] The citations in this report and recommendation are to the administrative record.

rating decision made by the Department of Veteran's Affairs ("VA") necessitated remand. Pl.'s Mem. 4, ECF No. 9. The record contains a 17-page rating decision from the VA, and an 8-page letter explaining Gaines' award for service-connected compensation with no reference to IU. R. 308–32. The ALJ's opinion states, however, that "the VA found [Gaines] to be totally disabled based on individual unemployability." R. 162. In the response to Gaines' motion for summary judgment, and in support of her own motion for summary judgment, the Commissioner indicated that Gaines "did not seek individual unemployability and was not awarded VA compensation on that basis," and that the ALJ's reference to IU was in error. Def.'s Mem. 2, 16, ECF No. 10. The Commissioner further asserted that the ALJ evaluated the VA disability decision in accordance with *Bird v. Commissioner of Social Security*, 699 F.3d 337 (4th Cir. 2012), and appropriately considered the combined impact of Gaines' impairments when formulating Gaines' residual functional capacity. *Id.* at 13–17.

The Court ordered Gaines to file a reply addressing the Commissioner's motion for summary judgment, including the Commissioner's assertion that Gaines did not seek IU and was not awarded benefits on the basis of the VA's finding of IU, as well as addressing whether the Fourth Circuit's holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) applies to this case, specifically whether the ALJ properly accounted for Gaines' limitations in concentration, persistence, and pace. ECF No. 12. In his reply, Gaines conceded that his argument regarding IU should be dismissed and argued for remand based on the ALJ's failure to comply with *Mascio*. ECF No. 13. The Commissioner responded to the reply asserting the ALJ fully

complied with *Mascio*. ECF No. 14. As neither party has identified special circumstances requiring oral argument, the case is deemed submitted for a decision based on the filings.[2]

## II. RELEVANT FACTUAL BACKGROUND

### A. Gaines' Background

Gaines was born in 1961 and was 51 years old on January 17, 2013, the onset date of his alleged disability. R. 303. Gaines completed college and received a Bachelor of Science degree. R. 175. Gaines served in the United States Navy from January 12, 1988 to May 31, 2013,[3] as a machinist mate, and retired from the Navy after 30 years. R. 176–77, 303. Gaines' wife, also a veteran, passed away in March 2007 from cancer. R. 154.

On September 11, 2013, the VA issued Gaines a disability rating decision evaluating 25 alleged impairments and finding that 3 impairments had a 40% rating or more, effective June 1, 2013, with a "combined service-connected disability evaluation" of 100%. R. 308–28.

### B. Relevant Medical Record[4]

On February 20, 2013, after a referral from his treating physician for "evaluation of mood symptoms," Gaines had an initial psychological evaluation at the psychology clinic of the Naval Medical Center in Portsmouth. R. 518–21. Gaines was seen by psychology intern Michael

---

[2] Gaines requested oral argument due to the novel issue raised regarding the ALJ's consideration of the IU rating decision made by the VA. Pl.'s Mem. 9, ECF No. 9. Gaines conceded in his reply brief that the VA did not make a finding of IU with respect to Gaines. Pl.'s Reply 1, ECF No. 13. Accordingly, Gaines' request for oral argument is DENIED.

[3] Gaines explained that he stopped working in January 2013, but had several months of leave that extended his official retirement date. R. 177.

[4] Gaines has multiple medical records related to his physical impairments. However, the issue before the Court, whether the ALJ appropriately considered Gaines' moderate limitations in concentration, persistence, and pace when crafting his residual functional capacity assessment, concerns Gaines' mental impairments. Accordingly, the relevant medical record for purposes of this report and recommendation consists of Gaines' mental health treatment records.

4

Labib under the supervision of David M. Levy, Ph.D. R. 518, 521. During his interview, Gaines identified his psychological stressors as the death of his wife (five years prior) and the death of his mother (two years prior). R. 519. He reported "concentration difficulties, difficulty falling and staying asleep . . . , feelings of guilt, crying spells triggered by memories of his wife and mother, and sad mood." *Id.* The following notes were made regarding Gaines' "behavioral observations/mental status": arrived on time and attended alone, good hygiene and grooming, good eye contact, cooperative, no motor abnormalities or signs of agitation, responses neither tangential nor circumstantial, spontaneous speech within normal limits, self-reported mood was euthymic, affect was appropriate and normal, no sign of cognitive disturbance or psychotic symptoms, average insight and judgment, denied suicidal or homicidal ideation, and "appears to be a reliable historian and no evidence of disingenuous reporting was noted." R. 520. Gaines became tearful when discussing his wife and mother. *Id.* Gaines was found to be a low risk for suicide. *Id.* Gaines was diagnosed with adjustment disorder with depressed mood, due in part to routine military stressors and lack of social support. R. 520–21. He was assigned a GAF score of 70, and instructed to follow up in two weeks for therapy and medication management.[5] R. 521.

The same behavioral observations, diagnosis, and GAF score were reported over Gaines' next three psychotherapy sessions. R. 476, 504, 515. On March 17, 2013, Gaines attended his first psychotherapy session with Dr. Levy. R. 513–16. Gaines reported no change in his mood, and that he had difficulty dealing with feelings of guilt. R. 514. Gaines returned for a second session on April 16, 2013, R. 502–04, reporting minimal change in mood since the last session,

---

[5] Gaines' active medications were butalb/acetaminophen/caffeine (treats tension headaches), sildenafil citrate (treats impotence), Meloxicam (treats pain), clobetasol propionate (a topical ointment that treats inflamed skin), and esomeprazole magnesium trihydrate (treats GERD). R. 518.

though he experienced "better ability in dealing with his sad feelings." R. 504.[6] On June 6, 2013, Gaines had his third session, R. 475–77, reporting no change in his mood, and that he had been dealing with his feelings of guilt by isolating himself. R. 476. This resulted in his missing his previously scheduled therapy session. *Id.* This third session focused on the importance of Gaines continuing with his treatment, and Dr. Levy noted that Gaines was retiring and would be transferring care to a civilian provider.[7] *Id.*

Psychiatric Nurse Clinician, Brenda G. Adams, R.N., with the Hampton VA emergency department, performed a mental health evaluation of Gaines on November 15, 2013, after Gaines reported needing something for depression and stress brought on by the holidays. R. 455–60. Nurse Adams noted that Gaines was pleasant and cooperative with good eye contact, and exhibited coherent and relevant speech, organized and goal directed thoughts, good judgment and insight with no delusions or hallucinations, but a depressed mood with congruent affect. R. 460. Nurse Adams referred Gaines to psychiatrist David Tamayo. R. 458–60. Dr. Tamayo noted that Gaines' chief complaint was depression. R. 455. Among other things, Gaines reported "trouble in thinking and concentration." *Id.* Dr. Tamayo found Gaines' mood was "'depressed' with constricted and dysphoric affect," "thought process was linear and goal directed," "insight and judgment was fair," and risk of suicide was "moderate." R. 456–57. Dr. Tamayo assigned Gaines a GAF score of 60, prescribed Zoloft and hydroxyzine, and directed Gaines to abstain from the use of "substances." R. 457–59.

Gaines received a mental health assessment by Victoria DeFilippo, M.D., with the Hampton VA Medical Center, on December 2, 2013. R. 445–53. Gaines reported that his

---

[6] Zolpidem tartrate (treats insomnia) was added to Gaines' active medications list. R. 503.
[7] Gaines' active medications at the time were: Vitamin D2, Meloxicam, esomeprazole magnesium trihydrate, and sildenafil citrate. R. 475.

difficulty, presumably with depression, began after his wife's death in 2007 from cancer. R. 447. He reported that he was "scattered, unmotivated and directionless," and that "he forgets things easily." R. 448. After performing a mental status examination, Dr. DeFilippo noted that Gaines was appropriately attired with "fair grooming," was "conversant with fair eye contact," had relevant speech "with normal rate and tone," thoughts were "organized and goal directed," insight and judgment were fair, with no delusions, hallucinations, or lethal ideation; however, Gaines appeared fatigued and, with respect to mood, Dr. DeFilippo indicated "'crying all the time' with full range of affect." R. 449. Dr. DeFilippo prescribed Wellbutrin "to target more symptoms of energy and concentration," and noted that Gaines had been taking Zoloft for less than one week. R. 449.

On January 6, 2014, Gaines reported to his primary care provider, Shubhada Iruvanti, D.O., that he had started taking medication for depression, but he was not sure if it had made a difference. R. 743.

Psychiatrist Bogdan D. Ionescu, M.D., at the Hampton VA Medical Center, performed a mental status examination of Gaines on January 14, 2014. R. 733–37. Gaines reported that he has no friends or social life, has flashbacks, feels guilt regarding his wife, drinks daily (a fifth of liquor), and smokes cigarettes. R. 734. Gaines was alert, oriented, calm, cooperative, in no acute physical distress, and had a stated mood of "drained" with congruent affect, appropriate eye contact, fluent speech, logical and goal-directed thoughts, and intact insight and judgment. *Id.* Gaines was scheduled to attend a bereavement group, and was continued on Bupropion and Ambien. R. 736. He indicated that he would be able to stop drinking on his own. *Id.*

On March 14, 2014, Gaines attended a psychotherapy session with Dr. Ionescu. R. 728–31. Gaines reported missing his wife, having no motivation, worrying, "snapping," and social

withdrawal. R. 729. Gaines denied psychotic, depressive or manic symptoms; suicidal or homicidal ideations; sleep or appetite problems; or drinking or drug use. *Id.* Gaines was pleasant, cooperative, alert, and coherent. *Id.* His major problems were listed as depression and alcohol abuse. R. 730. Gaines was scheduled for a bereavement group, but did not attend, and was referred to a drop-in group the day of the session. *Id.* Gaines was continued on Bupropion and Ambien, and started on Venlafaxine. *Id.*

Gaines filled out a patient health questionnaire for depression screening (PHQ-9) on May 14, 2014, and received a score of 19. R. 670. A score of 10 on the questionnaire represents moderate depression, a score of 15 indicates moderately severe depression, and a score of 20 indicates severe depression.

On November 5, 2014, Gaines had an individual therapy session with staff psychologist Jennifer Thiessen, Psy.D., with the Hampton VA Medical Center. R. 838–40. Gaines was on time; neatly groomed; fully alert and oriented; with normal eye contact; generally relevant, linear and goal-directed thought; low average insight; intact judgment; with depressed mood and sad, restricted affect. R. 839. Gaines reported "difficulties with sad and tearful mood, anhedonia, loss of motivation and interest, poor concentration, and difficulties finding new meaning and purpose in life." *Id.* Gaines' treatment plan included group and individual therapy. *Id.*

Gaines scored a 14 on a patient health questionnaire for depression screening (PHQ-9) conducted on December 3, 2014. R. 818.

On December 15, 2014, Gaines saw Dr. Ionescu for medication management and a therapy session. R. 844. Gaines reported anxiety when around people, anger triggered by disagreements with people, and a depressed mood. R. 844.

During a session with Dr. Thiessen on January 22, 2015, Gaines reported "a sense of purposelessness, numbness, and apathy regarding his daily functioning." R. 845.

Gaines attended nine group therapy sessions from July 2014 through March 2015 at the Hampton VA Medical Center. R. 823–76.

Dr. Thiessen treated Gaines on March 11, 2015. R. 882–884. Dr. Thiessen noted that Gaines' depression was "characterized by persistent guilt and regret regarding past decisions around his wife's cancer treatment and passing, as well as depressed mood, loss of interest/motivation in activities, difficulties with concentration and decision making, appetite and sleep changes, passive and occasional thoughts that life is not worthwhile as well as alcohol use." R. 882–83. Dr. Thiessen noted that Gaines had the support of his children and grandchildren, and was participating in group therapy. R. 883.

The next day, on March 12, 2015, Gaines returned to Dr. Ionescu for medication management and a therapy session. R. 878–82. Dr. Ionescu listed Gaines' major problems as depression and alcohol abuse, and advised Gaines to quit tobacco. R. 880–81.

## C.    Medical Opinions and Residual Functional Capacity Assessments

On April 3, 2014, a non-examining state agency psychological consultant, Leslie E. Montgomery, Ph.D., conducted a mental residual functional capacity ("RFC") assessment, R. 210–17, and opined that Gaines has moderate difficulties in maintaining concentration, persistence or pace, R. 212, including finding Gaines is moderately limited in his ability to "carry out detailed instructions;" "maintain attention and concentration for extended periods;" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "work in coordination with or in proximity to others without being distracted by them;" and "complete a normal workday and workweek without interruptions from

9

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 216. Dr. Montgomery further found that Gaines' mental impairments "do not prevent [him] from accomplishing simple and routine task[s] in a non-public work area." R. 213.

Paul Cherry, Ph.D., reviewed the mental RFC assessment conducted by Dr. Montgomery on April 7, 2014. R. 660–63. Dr. Cherry agreed with Dr. Montgomery's assessment, and noted that Gaines "retains the ability to understand, remember and carry out simple instructions," and "[m]ight function best in a setting with limited interpersonal interaction due to mood difficulties." *Id.*

On reconsideration, a second, non-examining state agency psychologist consultant, Howard S. Leizer, Ph.D., reviewed Gaines' record and completed another disability determination explanation form with a mental RFC assessment on September 8, 2014. R. 244–46. Dr. Leizer found "no significant change" in Gaines' conditions and limitations, R. 239, and made the same findings with respect to Gaines' moderate limitations in sustained concentration and persistence. R. 245. Dr. Leizer added that Gaines "has difficulty maintaining thoughts and memory in his daily routine. He is treated for depression on meds. Can understand and remember simple instruction." *Id.* Dr. Leizer concluded Gaines' "mental health impairment continues to result in some limitations in his mental efficiency due to residual mood symptoms. He would continue to retain capacity for simple, routine tasking in an environment that requires minimal social interactions and infrequent changes in setting and tasking." R. 239–40.

### D.    VA Rating Decision

On September 11, 2013, the VA granted Gaines a combined disability rating of 100%. R. 308–332. The VA determined Gaines had a service connected disability of 70%, effective June

1, 2013, for "major depressive disorder, single episode, moderate with secondary alcohol abuse (claimed as anxiety\grief and grieving\ansomnbia)." R. 308. The reasons listed for this rating decision include: "[d]ifficulty in adapting to work," "[d]ifficulty in adapting to a worklike setting," "difficulty in adapting to stressful circumstances," "[d]ifficulty in establishing and maintaining effective work and social relationships," "[o]ccupational and social impairment with reduced reliability and productivity," "chronic sleep impairment," "depressed mood," and "[t]he examiner's assessment of [Gaines'] current mental functioning, which is partially reflected in [Gaines'] Global Assessment of Function score" of 59. R. 311. The decision explains that a GAF score in the range of 51–60 "indicates moderate symptoms; or any moderate difficulty in social, occupational, or school functioning." *Id.*

E.   **Function Report**

On December 30, 2013, Gaines completed a function report. R. 373–80. He indicated that his daily activities included showering, grooming, microwaving food, taking medication, checking appointments, watching television, napping, cleaning up, washing clothes, using the computer, checking mail, organizing bills, researching car problems, and possibly going to the thrift store. R. 373. Gaines reported having trouble sleeping due to numbness, cramps, nightmares, pain, frequent urination, and a ringing in his ears. R. 374. With respect to his personal care, Gaines reported that it takes longer than usual to get dressed, and that he often pulls off his CPAP machine during sleep. *Id.* Gaines indicated that he eats sandwiches or microwaves snacks, and tries not to cook because he loses focus and sometimes forgets the stove is on. R. 374–75. He sets his phone alarm and reminders to make appointments, take medication, perform tasks around the house, and return phone calls. R. 375. With respect to house work, Gaines stated he straightens the room and washes laundry, though he forgets to turn

the iron off. R. 375. He reported that he goes outside almost every other day and walks or drives. R. 376. He shops monthly in thrift stores or for computer equipment, can pay bills and count change, but cannot handle a savings account or use a checkbook. *Id.* Gaines explained that his medication, depression, mood swings, and memory loss make it difficult to manage money. R. 377. Gaines texts and uses Facebook, needs reminders to go to appointments, but does not need anyone to accompany him. *Id.* Gaines stated that his mind drifts during conversations, that he must reread written instructions "over and over, step by step," and that he can follow spoken instructions "ok if not long." R. 378. He reported not being able to handle stress or changes in routine well. R. 379.

### F.   Testimony before the ALJ

(Ronald Gaines)

At the hearing, on February 11, 2015, Gaines testified that he had a valid driver's license and drives every other day but avoids "extra long" drives due to becoming uncomfortable. R. 175–76. On a typical day, Gaines reported that he gets up between 8:00 and noon, and takes off all of his sleeping apparatus. R. 177–78. This consists of a sleep apnea mask, braces on his arms that assist with carpal tunnel syndrome and keep his arms from going numb, and a foot sock for his plantar fasciitis that keeps his left foot at an angle. R. 177–78, 182, 191. He reported that he does some stretches, takes his pills, goes downstairs, and gets a sandwich. R. 178. Gaines testified that he spends the rest of his day watching television, on the Internet, on Facebook, and texting. *Id.* He indicated he does not go outside much, except to go to the mailbox. *Id.* He reported doing his own cleaning and shopping, but that he had slowed down on cooking, resorting to eating sandwiches, cereal, or microwavable food. R. 178–79. He meets with the Jehovah Witness once a week, and sees his brother once every week to two weeks. R. 179. He

12

testified that he can bathe and dress himself, and that he goes to bed between 11:30 p.m. and 2:00 a.m. R. 180. He has difficulty sleeping, but indicated that sleeping pills help him to sleep. R. 181.

Gaines reported that his biggest problem physically is the carpal tunnel he has in his hands, which makes it difficult to grip, and causes weakness, tingling, and aching. R. 181–82. He also reported back pain, a constant, dull ache that is worse when he first wakes up or when he stands for more than 15 minutes. R. 183–84, 188. He stated that he goes to physical therapy weekly, and that the doctors had not recommended any additional treatment for his back. R. 184. He reported knee pain that is worse in his left knee, but reported he does not use a cane or other assistive device. R. 185. Gaines testified that he lays down up to six times a day for one or two hours. R. 191.

Gaines indicated he had been diagnosed with depression that results in him not wanting to be around people and being emotional. R. 186. Gaines reported that it had been difficult for him since his wife passed away in 2007. R. 193. He indicated he would cry at work, and had to send his daughter to live with her sister so that she would not see his "destruction." R. 193–94. He reported thinking about two incidences from his naval career that resulted in a death and an injury to men in his command. R. 186–87. Gaines testified that he sees a psychiatrist at the VA, attends counseling, attends group therapy, and takes medication to help with his depression. R. 187.

Gaines also reported having difficulty paying attention, and that his "mind is all over the place," causing him to forget that something is on the stove, or causing him to drive to the Naval Base out of habit even though he needed to drive someplace else. R. 190–91.

(Vocational Expert – Edith Edwards)

Edith Edwards, a vocational expert ("VE"), testified that a hypothetical person with Gaines' age, education, and work experience, who was able to perform light work activity, but limited to "only occasionally crouch or stoop; could engage in frequent, but not constant, grasping and fingering; will be limited to routine, repetitive tasks; would need to work in an environment that would not require direct interaction with the general public; should avoid ladders or scaffolding; would need to alternate periodically between sitting and standing on an hourly basis, could perform light level jobs, including work as an office helper, clerical checker, and unarmed security guard. R. 195–96. The VE also testified that those jobs existed in significant numbers in the national economy. *Id.* When asked whether any jobs exist for an individual with those same limitations who would "require frequent, unscheduled breaks resulting in them being off task more than 15 percent of the day," the VE answered "[n]o work." R. 196.

## III. THE ALJ's DECISION

To evaluate Gaines' claim of disability,[8] the ALJ followed the sequential five-step analysis set forth in the SSA's regulations for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a). Specifically, the ALJ considered whether Gaines: (1) was engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment that meets or

---

[8] To qualify for DIB, an individual must meet the insured status requirements of the Social Security Act, be under age 65, file an application, and be under a "disability" as defined in the Act. "Disability" is defined, for the purpose of obtaining disability benefits, as the "inability to do any substantial gainful activity, by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). To meet this definition, the claimant must have a "severe impairment" making it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a).

medically equals a condition within the SSA's listing of official impairments; (4) had an impairment that prevents him from performing any past relevant work; and (5) had an impairment that prevents him from engaging in any substantial gainful employment. R. 156–66.

The ALJ found that Gaines met the insured requirements[9] of the Social Security Act through December 31, 2018, and had not engaged in substantial gainful activity since January 17, 2013, his alleged onset date of disability. R. 155–56. The ALJ noted that Gaines met the non-disability requirements for disabled widower's benefits set forth in section 202(f) of the Social Security Act, and that the prescribed period ended on March 31, 2014.[10] R. 155. At step two, the ALJ found that Gaines had the severe impairments of osteoarthritis, depression, obstructive sleep apnea, carpal tunnel syndrome, and degenerative disc disease. R. 156. The ALJ determined that Gaines' remaining impairments were non-severe because they "did not exist for a continuous period of twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations." *Id.*

The ALJ found at step three that Gaines' impairments did not singly or in combination meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for a finding of disability at step three. R. 156–58 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). When conducting the step three analysis, the ALJ

---

[9] In order to qualify for DIB, an individual must also establish disability that commenced on or before the last day in which that individual met the insured status requirements of the Social Security Act. *See* 42 U.S.C. § 423(a), (c); 20 C.F.R. § 404.131(b).

[10] To qualify for widower's benefits, an individual must have attained the age of 50, be unmarried, and have a disability that began before the end of the prescribed period (the prescribed period ends seven years after the insured's death). 20 C.F.R. § 404.335. Gaines' spouse died in March 2007; therefore, Gaines must establish his disability began on or before March 31, 2014 to qualify for widower's benefits. R. 154–55.

found that Gaines had moderate difficulties with regard to concentration, persistence, or pace. R. 157. This finding was based in part on Gaines' statements that "he spends a lot of time in thought, thinking about his life and its losses," and "that his mind 'is all over the place.'" *Id.* The ALJ also referenced, however, Gaines' January 2014 mental status examination by Dr. Ionescu, wherein Gaines "denied symptoms associated with cognitive deficiencies, including forgetfulness, losing track of time, getting lost in familiar places, and difficulty with managing money." R. 157, 734.

The ALJ next found that Gaines possessed an RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations: "he can occasionally crouch and stoop; he can frequently, but not constantly, grasp and finger; he is limited to routine and repetitive tasks; he must work in an environment that would not require direct interaction with the general public; he should avoid ladders and scaffolding; and he would need to alternate between sitting and standing on an hourly basis." R. 158–62. With respect to Gaines' mental limitations, the ALJ considered Gaines' testimony that he could not work due to mental symptoms stemming from his depression, that he did not want to be around other people, that he is quick to judge others and become angry, that he has crying spells and heightened emotions, that he felt a "huge loss" when his wife of 25 years passed away in 2007, that he replays traumatic events from his service in the Navy, and that he sent his daughter away to live with her older sister so that she would not see him "destructing." R. 159, 161. The ALJ found that Gaines' statements concerning the "intensity, persistence, and limiting effects" of his symptoms were "not entirely credible." R. 160. The ALJ considered Gaines' mental health treatment, including medication, group therapy, and individual therapy since February 2013, when Gaines was diagnosed with adjustment disorder with depressed mood. R. 161. Noting that Gaines was consistently assigned

16

a GAF of 70 during his therapy sessions, indicating mild symptoms, the ALJ discussed that Gaines was assessed as a moderate risk of suicide during his November 2013 treatment at the VA emergency department and was assigned a GAF of 60. R. 161, 455–58. The ALJ indicated that the GAF score of 60 was inconsistent with the moderate risk of suicide. R. 161. The ALJ commented that Gaines' score of 14 on the DPH-9 completed in May 2014 was an improvement over his December 2013 score of 19. *Id.* The ALJ noted that "the record is replete with evidence of symptoms consistent with depression," but found that the symptoms did not preclude all work. R. 161.

The ALJ gave "great weight" to the opinions of the non-examining state agency medical and psychological consultants, and noted that with regard to Gaines' mental limitations, "they found that he would do best in low-stress settings requiring infrequent changes in demands, as well as in settings requiring infrequent social interactions." R. 162.

In determining Gaines' RFC, the ALJ performed a thorough analysis of the VA rating decision in accordance with *Bird v. Commissioner of Social Security*, 699 F.3d 337 (4th Cir. 2012). R. 162–64. The ALJ indicated that a deviation from the 70 percent disability rating for depression was appropriate because "the record does not approximate the VA's findings," and "the objective evidence regarding [Gaines'] symptoms from his depression does not preclude all work-related activities." R. 163.

After determining Gaines' RFC, at step four of the analysis, the ALJ determined that Gaines was unable to perform any past relevant work. R. 164. Finally, at step five, and after considering Gaines' age, education, work experience, and RFC, the ALJ found that there are other light jobs (such as office helper, clerical checker, and unarmed security guard) existing in significant numbers in the national economy that Gaines could perform. R. 164–65.

Accordingly, the ALJ concluded that Gaines was not under a disability from January 17, 2013 through the date of the ALJ's decision and was ineligible for a period of disability, DIB benefits, or widower's benefits. R. 165–66.

## IV. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (*overruled on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)).

When reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589; *Hays*, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Craig*, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. *Perales*, 402 U.S. at 390; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th

18

Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)). Thus, reversing the denial of benefits is appropriate only if either (A) the record is devoid of substantial evidence supporting the ALJ's determination, or (B) the ALJ made an error of law. *Coffman*, 829 F.2d at 517.

## V. ANALYSIS

The only remaining issue in this case is whether the ALJ appropriately accounted for Gaines' moderate limitations in concentration, persistence, or pace when determining his RFC. For the reasons that follow, the Court finds that the ALJ failed to explain how Gaines' moderate mental limitations were accommodated by the RFC, and this lack of analysis warrants remand pursuant to *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).

The regulations provide that, after step three of the ALJ's five-part analysis, but prior to deciding whether a claimant can perform past relevant work at step four, the ALJ must determine a claimant's RFC. 20 C.F.R. § 404.1545. The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting . . . 8 hours a day, for 5 days a week." Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis in original). An ALJ must assess a claimant's work-related abilities on a function-by-function basis. *Id.* at *3. After doing so, the ALJ can express the RFC in terms of the exertional levels of work (sedentary, light, medium, heavy, and very heavy) and the nonexertional limitations established by the evidence. *Id.* The RFC must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The determination of RFC is based upon a consideration of all the relevant medical and other evidence in the record.

20 C.F.R. § 404.1545(a)(3).[11] The ALJ uses that RFC to determine whether the claimant can perform his past relevant work, and whether the claimant can adjust to any other work that exists in the national economy. *Id.* at § 404.1545(a)(5).

In a decision issued two days prior to the ALJ's decision in this case, the Fourth Circuit clarified the requirements of SSR 96-8p, holding that an ALJ does not account for a claimant's moderate limitations in concentration, persistence, or pace by limiting the RFC to simple or routine tasks, or unskilled work. *Mascio*, 780 F.3d at 638. *See also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009) (*per curiam*); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996). "As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Mascio*, 780 F.3d at 638.

*Mascio* did not adopt a *per se* rule requiring remand whenever the ALJ does not perform an explicit function-by-function analysis, but it did require enough analysis for a court to meaningfully review the ALJ's conclusions. *Id.* at 637 ("Here, the ALJ has determined what functions he believes Mascio can perform, but his opinion is sorely lacking in the analysis needed for us to review meaningfully those conclusions. In particular, although the ALJ concluded that Mascio can perform certain functions, he said nothing about Mascio's ability to perform them for a full workday.").

In this case, the ALJ determined at step three that Gaines has moderate limitations in concentration, persistence, or pace. R. 15–16. When determining Gaines' RFC, the ALJ

---

[11] "Other evidence" includes statements or reports from the claimant, the claimant's treating or nontreating sources, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529(a).

considered Gaines' testimony regarding his mental symptoms, R. 159, summarized the treatment records and their discussion of symptoms consistent with depression, R. 161–62, considered Gaines' activities of daily living, R. 162, and addressed the opinion evidence, R. 162. The ALJ assigned "great weight" to the opinions of the state agency psychological consultants, the only opinion evidence in the record addressing the effect Gaines' mental impairments have on his ability to work. R. 162. These consultants agreed that Gaines has moderate difficulty in maintaining concentration, persistence or pace, R. 212, 660, including finding Gaines is moderately limited in his ability to "carry out detailed instructions;" "maintain attention and concentration for extended periods;" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "work in coordination with or in proximity to others without being distracted by them;" and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 216, 662–63. The non-examining state agency psychological consultants opined that Gaines could perform "simple and routine task[s] in a non-public work area," "in an environment that requires minimal social interactions and infrequent changes in setting and tasking," and "in low-stress settings requiring infrequent social interactions." R. 162, 213, 239–40, 245, 663.

The ALJ determined Gaines has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following exceptions: "he can occasionally crouch and stoop; he can frequently, but not constantly, grasp and finger; he is limited to routine and repetitive tasks; he must work in an environment that would not require direct interaction with the general public; he should avoid ladders and scaffolding; and he would need to alternate between sitting and standing on an hourly basis." R. 158–162. Gaines has not argued that the RFC fails to account

for his physical limitations, but that "the RFC is inadequate as it only addressed the mental capacity to understand or comprehend a task, but says nothing about the ability to maintain the pace necessary to complete or sustain a task." Pl. Reply 4. *Mascio* explicitly held that a limitation to simple, routine tasks and unskilled work does not adequately account for limitations in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638 ("an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work") (quotations omitted). Although *Mascio* does not create a *per se* rule of remand under these circumstances, the holding does require an explanation of why such limitations were not included in the RFC. *Id.*

The Commissioner asserts "the ALJ's RFC finding specifically addressed the ability to stay on task – as opposed to just the ability to perform simple tasks – by limiting [Gaines] to repetitive tasks. That is, [Gaines] does not have the concentration abilities to transition to multiple, different tasks, but he can stay on task so long as the duties are repetitive and 'require infrequent changes in demands.' R. 162." Def.'s Suppl. Resp. 3, ECF No. 14. This attempt to distinguish *Mascio*, by arguing that limiting Gaines' RFC to the performance of repetitive tasks adequately addresses his ability to stay on task, is not persuasive. District courts in the Fourth Circuit have routinely held that remand is necessary where the ALJ limits a claimant to simple, routine, repetitive tasks, in an effort to address moderate limitations in concentration, persistence, and pace. *See Shaw v. Colvin*, No. 2:15cv432 (E.D. Va. Sept. 28, 2016) report and recommendation adopted by 2016 WL 6573957 (E.D. Va. Nov. 3, 2016); *Boyd v. Colvin*, No. 3:14cv673, 2015 WL 5972482, at *2 (W.D.N.C. Oct. 14, 2015); *Pinkerton v. Colvin*, No. 5:14cv173, 2015 WL 5972488, at *2 (W.D.N.C. Oct. 14, 2015); *Jackson v. Colvin*, No. 3:14cv24834, 2015 WL 5786802, at *3 (S.D. W.Va. Sept. 30, 2015); *Wedwick v. Colvin*, No.

2:14cv267, 2015 WL 4744389 (E.D. Va. Aug. 7, 2015); *Hill v. Colvin*, No. GLR-14-2872, 2015 U.S. Dist. LEXIS 53766, at *6 (D. Md. Apr. 24, 2015). On the other hand, district courts in the Fourth Circuit have found an ALJ complies with *Mascio* by limiting claimants to non-production work or work not performed at an assembly-line pace, because these limitations account for a claimant's difficulty with staying on task. *See Baker v. Colvin*, No. 3:15cv637, 2016 WL 3581859, at *4 (E.D. Va. June 7, 2016) (collecting cases); *Sizemore v. Colvin*, No. 5:15cv53, 2016 WL 483140, at *2 (W.D.N.C. Feb. 5, 2016); *Parker v. Colvin*, No. 3:14cv502, 2015 WL 5793695, at *23 (E.D. Va. Sept. 29, 2015).

The Commissioner next argues that "restricting [Gaines] to no direct public interaction further limits distractions that would interfere with [Gaines'] ability to stay on task." Def.'s Suppl. Resp. 3. The ALJ's restriction on interaction with the public, however, "concerns [Gaines'] moderate limitation in social functioning, not [his] moderate limitation in concentration, persistence, or pace." *See Watson v. Colvin*, No. 2:15cv407, 2016 WL 4154920, at *4–5 (E.D. Va. Aug. 3, 2016) (remanding where the ALJ limited the claimant to "simple, repetitive tasks with training duration up to a month . . . only occasional interaction with the public, co-workers and supervisors"); *see also Baez v. Colvin*, No. 2:14cv628, 2015 WL 9652888, at *13 (E.D. Va. Dec. 7, 2015) (remanding where the ALJ limited the claimant to "only occasional contact with coworkers, supervisors, and/or the general public due to limitations in social functioning; and only simpl[e], routine, repetitive tasks, due to limitations in concentration, persistence, or pace"), report and recommendation adopted, No. 2:14cv628, 2016 WL 69900 (E.D. Va. Jan. 5, 2016); *Handy v. Comm'r, Soc. Sec. Admin.*, No. SAG-09-166, 2015 WL 9302972, at *2–3 (D. Md. Dec. 22, 2015) (remanding where the ALJ limited the claimant to "simple, routine, repetitive tasks involving short, simple instructions in an environment with few

23

workplace changes, no public contact, and only brief, infrequent contact with supervisors and coworkers not requiring teamwork or collaboration"); *Taylor v. Colvin*, No. 7:14cv00616, 2015 WL 7308680, at *1–2 (W.D. Va. Nov. 19, 2015) (remanding where the ALJ limited the claimant to "unskilled work not involving more than occasional interactions with the public"); *Carr v. Colvin*, No. 7:14cv393, 2015 WL 1886551, at *1–4 (W.D. Va. Apr. 15, 2015) (remanding where the ALJ limited the claimant to "performing a low stress job, which means that she can understand, remember, and carry out only simple instructions and complete repetitive, unskilled tasks in a position that requires only occasional interaction with the public").

The Commissioner references the state agency psychological consultants' finding that Gaines "retains the ability to understand, remember and carry out simple instructions," and "[m]ight function best in a setting with limited interpersonal interaction due to mood difficulties." Def.'s Resp. 4, R. 663. The Western District of Virginia has held that an ALJ complies with *Mascio* by limiting the claimant to the performance of simple, repetitive, unskilled work with no, or limited, interaction with the public where the state agency psychologists and consulting psychological examiner opined that the claimant was capable of working under these conditions. *See Mitchell v. Colvin*, No. 7:14cv00041, 2015 WL 5690899, at *7–8 (W.D. Va. Sept. 28, 2015); *St. Clair v. Colvin*, No. 7:13cv571, 2015 WL 5310777, at *6–7 (W.D. Va. Sept. 11, 2015). In both of these cases, however, the claimants were sent to a consultative psychologist for a mental status examination, and the consultative psychologists opined that the claimants were capable of performing work with the noted limitations after administering examinations and testing. *Mitchell*, No. 7:14cv00041, 2015 WL 5690899, at *14; *St Clair*, No. 7:13cv571, 2015 WL 5310777, at *12.

In this case, where Gaines described his difficulties with concentration repeatedly over the course of his mental health treatment, R. 448, 519, 882–83, Gaines received medication specifically targeting his concentration difficulties, R. 449, the state agency consultants recognized Gaines' moderate limitations in concentration over several areas, R. 212, 216, 245, 660–63, and no consultative examination was sought, it is incumbent on the ALJ to explain how Gaines' moderate mental limitations are accounted for in his RFC. The ALJ's summary of the evidence does not substitute for an explanation of how the RFC adequately accounts for Gaines' moderate mental limitations, specifically Gaines' ability to stay on task for an entire workday and over the course of a work week. Moreover, the VE was asked a hypothetical that arguably addressed limitations in concentration, persistence, or pace when asked whether any jobs exist for an individual with the RFC provided by the ALJ who would "require frequent, unscheduled breaks resulting in them being off task more than 15 percent of the day." R. 196. The VE responded that no work existed for such an individual. *Id.*

Under *Mascio*, the ALJ's failure to explain why the moderate limitation at step three did not translate into a limitation in the RFC necessitates remand. 780 F.3d at 638. On remand, the ALJ needs to explain whether and how Gaines could perform light work despite his moderate mental limitations, and do so in a way that is reviewable by the Court.

## VI. RECOMMENDATION

For the foregoing reasons, this Court recommends that Gaines' motion for summary judgment be GRANTED on the grounds addressed in Gaines' reply brief (ECF Nos. 8, 13), the Commissioner's motion for summary judgment (ECF No. 11) be DENIED, and the decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this report and recommendation.

## VII. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
December 22, 2016

26